JAMES AND WIFE V. J. AND T. THOMPSON.

But, whether the qualification, appended by the Court, (to a charge asked,) be abstract—not based on the facts as proved—or whether it be correct as a legal proposition, is not very material, as we are of opinion that the verdict was authorized by the facts, and that the justice of the case, as made, has been attained.

See this case as to the construction of the Statute, (Hart. Dig. Art. 1153,) allowing a year's support for the widow and minor children, or either ; also, of the Statute, (Hart. Dig. Art. 1154,) which provides for setting aside the homestead and other property, exempt by law from execution, for the use of the widow and children, or either.

In cases of solvent estates, where the family, one of whom is administrator, has cultivated the homestead for the benefit of the estate, the widow not dissenting, she cannot claim afterwards for the use and occupation of the property, unless she would show that the adult members of the family had misapplied or converted the proceeds to their own use.

Appeal from Newton.

*J. M. Ardrey*, for appellant.

*O. M. Roberts*, for appellee.

HEMPHILL, CH. J.   This suit was brought by William James and his wife Susan, against Joseph Thompson and Thomas Thompson, to recover for the use of land, horse and gin, in the year 1850.   The original petition alleged a special contract, but by amendment, the plaintiffs claimed as on a general *indebitatus* count in assumpsit.   The leading facts of the case are, that Joseph Thompson, father of the defendants, and former husband of the plaintiff Susan, died early in January, 1850, leaving land, widow and family, some of the children being minors.   The family, including the defendants, continued to live on the farm in the year 1850, and cultivated it together, as the witnesses understood, for the purpose of paying the debts.

of the deceased. The widow received one bale of cotton, of the crop, which she used in the purchase of family supplies. Four bales were used for the discharge of a debt due by the estate. There is no evidence as to the amount of crop raised, nor as to its appropriation, except of these five bales. On the the 19th April, 1850, the Probate Court directed to be set apart, for the use of the widow and the minor children, the homestead of two hundred acres of land, so as to include the improvements, the horse, &c. The cultivation of the farm had commenced previous to the order setting apart the homestead. Joseph Thompson, one of the defendants, had been appointed aministrator, in March, 1850. There is no evidence that the defendants assumed exclusive control of the farm or plantation.

The defendants, during the year, cleared about eight acres of the estate lands, one acre and one-half of which were included within the limits of the homestead ; the remainder on other lands, was afterwards sold at administrator's sale.

The jury found for defendants, and the plaintiffs assign error in the charge of the Court, and in refusing the motion for a new trial.

The plaintiff requested the Court to charge, in effect, that the widow, at the death of the husband, having become the head of the family, and the homestead having been assigned for the benefit of herself and minor children, was entitled to recover from any one using the property and effects of the homestead, the reasonable value of such use and occupation. The Court gave this, with the qualification, in effect, that if she agreed or assented to the cultivation of the homestead, for a particular year, the proceeds to go in payment of the debts of the estate, and the party contracting had commenced the preparation for the crop, and afterwards the premises had been set off for her benefit, she would not be entitled to recover for their use during that year.

The objection by appellants, to the charge, is, that there was no evidence of any such contract or agreement by the widow,

as that referred to by the Court. There is no direct proof of such fact, but the evidence leaves the impression, and is to the effect, that there was a mutual understanding that the family should cultivate the lands together, and that the proceeds should be applied to the payment of the debts. But, whether the qualification, appended by the Court, be abstract—not based on the facts as proved—or whether it be correct as a legal proposition, is not very material, as we are of opinion that the verdict was authorized by the facts, and that the justice of the case, as made, has been attained.

The appellees insist that the designation, by the County Court, of the homestead, (including the gin and also the horse,) to the use of the widow and minor children, does not vest in the widow and minors, any exclusive right, but that the appellees, being also children of the deceased and part of the family, had a right to use and occupy said property, conjointly with the widow, especially if there was a common purpose to pay the debts of the estate by using it.

This view of the rights of appellees seems to be well supported by the law, especially under circumstances such as exist in this case. The Statute of 1848 contains two provisions, setting apart property to the widow and children of the deceased. By the first, (Hart. Dig. Art. 1153,) there is to be allowed to the widow and minor children, if there be either or any, an amount sufficient for their support for one year, to be paid to the widow, if there be one, if not, to the guardian of the child or children. By the second, (Hart. Dig. Art. 1154,) all the property exempt from execution (except the year's supply of provisions, which by the previous Section was directed to be assigned to the widow and minor children,) is to be set apart for the use of the widow and children, without discriminating between minor and adult children.

This Section makes provision also for cases in which there may not be, among the effects of the deceased, the specific articles exempt from execution,—and it does not require (as did the Statute of 1846, Hart. Dig. Art. 1107,) that these articles

Vol. XIV. 30

should be procured for the wife and children,—but that an allowance should be paid in lieu thereof—the whole of which is to be paid to the widow, if there be no children, or to the children, if there be no widow ; but if there be a widow and a child or children, then one-half to the widow and the other half to the child, or be divided equally among the children ; "Provided, that "if the estate be not insolvent, nothing in this Section contained "shall be so construed, as to prohibit the distribution and par-"tition of said estate, including the portion herein provided to "be set apart for the widow and children, and provided that "the year's provision shall be exempt from such distribution."

The first of these Sections (Hart. Dig. Art. 1153,) is very plain and easy of construction. The object is to allow a year's support for the widow and the minor children, or for the minor children if there be no widow, and if there be a widow, she is to receive the whole for the joint benefit of herself and the minor children.

But what may be the full scope and precise purpose of the other section, (Hart. Dig. Art. 1154,) it is not so easy to determine. There is no distinction, in terms, between the minor and adult children, nor was there any in the like provisions of the Statutes of 1843, (Hart. Dig. Art. 1062,) and of 1846, (Id. Art. 1107.) If we are to consider the policy and object of such provision, the obvious conclusion would be, that the Legislature must have intended, primarily, at least, that the family should be secured in the home of the deceased, whether the family consisted of a widow, or children, or of either, or whether the children at home be minors or adults. A protection to the family is the reasonable object, and in this view the provision entirely accords with the spirit and scope of the legislative and constitutional immunities and exemptions of property, in favor of heads of families. Some of the provisions of this Section are not, however, entirely reconcileable with this view. For instance, if the specific articles, the homestead, &c., do not exist among the effects of the estate, no provision is made for the purchase of the like exempt articles ; but in lieu thereof

there is to be an allowance of other property or money, and this is to be divided between the widow and children ; and though these exempted articles exist among the effects of the estate, yet if the estate be solvent, they are subject to partition, with the property. I shall not attempt to reconcile all these provisions. The main object seems to be, to provide for the widow and children at all events. If the estate be solvent, there is no special object in assigning the homestead to the widow and children, or at least in continuing it to them for a longer time than necessary to prepare for partition. If it be not solvent, then such assignment is to be continuous, and if the articles do not exist in the estate, the widow and children are then to be regarded as preferred claimants for the value of such articles, and this is to be divided between them, in shares fixed by the Statute.

In this case there is no evidence as to the solvency or insolvency of the estate, and the articles existing in kind, were set apart to the widow and minor children. The defendants lived with their mother at the homestead, and for aught that appears, were recognized members of the family ; and the question is, whether, as such, they were not entitled to a share of the proceeds of the property. And we are clearly of opinion that they were. Without considering or deciding upon their claims, merely as children of the deceased, yet being members of the family, laboring together for a joint purpose, that of paying the debts of the estate, and of course we must presume also for the support of the family, they could not be charged with rent, or on account of the use, unless it were proven that they had converted an undue portion of the proceeds of the property to their exclusive benefit. The object which they proposed to accomplish by their joint labors, was laudable.

It is very true, that the assignment of the homestead is not for the benefit of creditors. But if the only cleared lands belonging to the estate are on the homestead, it might be as beneficial to the heirs as to the creditors, that the crops and profits of the lands should be applied to the extinguishment of the

debts.   Otherwise large portions of the estate might be exposed to and sacrificed at sale for this purpose; and in cases of solvent estates, where the homestead is subject to partition, where, the family, one of whom is administrator, has cultivated the lands for the benefit of the estate, the widow concurring, at least not dissenting, she cannot claim afterwards for the use and occupation of the property, unless she would show that the adult members of the family had misapplied or converted the proceeds to their own use.

There is no evidence that the defendants dervied any exclusive benefit from their labor.   The facts show a common case of the family living together and attempting, by joint effort, to pay off the debts of the estate.   That the defendants were not laboring for their own benefit is obvious from their clearing, to the amount of eight acres, a work of considerable toil in a timbered region.

As a general rule, I have no doubt that the widow, where a homestead has been assigned, must be regarded as the head of the family.   But the family consists of all its members, as well adults as minors.   As long as these remain, and are regarded and treated as members of the family, they have not the rights nor are they subjected to the liabilities of strangers.   They are entitled to a joint share of the fruits of their joint labors, and cannot be made liable unless they have converted the proceeds to their separate benefit.   There is no evidence of that in this case.   And upon the facts and the law as arising upon them, we are of opinion that the jury were justified in their verdict; and it is ordered that the judgment be affirmed.

Judgment affirmed.